UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

ROBERT I. SAWYER,

                                                  Plaintiff,

    v.                                                    9:19-CV-879
                                                            (MAD/ATB)

CORRECTION OFFICER LOCY,[1]

                                                Defendant.

---

ROBERT I. SAWYER, Plaintiff, pro se
TERESA M. BENNETT, Asst. Attorney General for Defendant

ANDREW T. BAXTER, United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the Honorable Mae A. D'Agostino, United States District Judge. Presently before the court is defendant's motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. Nos. 24, 27). Plaintiff responded in opposition to the motion. (Dkt. Nos. 31, 33). Defendant filed a reply, and plaintiff submitted what this court has accepted as a sur-reply. (Dkt. Nos. 34, 36, 37). For the reasons set forth below, this court recommends denying defendant's motion.

**I.**    <u>**Summary Judgment**</u>

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir.

---

[1] The Clerk of the Court is directed to amend the caption to correctly identify Correction Officer Locy as the only remaining defendant in this action.

2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin*, 467 F.3d at 272.

**II.     Facts**

At all times relevant to the underlying incident, plaintiff was a pretrial detainee housed at Jefferson County Correctional Facility ("JCCF"). The parties do not dispute that on April 26, 2019, at approximately 12:05 p.m., plaintiff began to choke on a peach pit and was unable to breathe. (Dkt. No. 11, Amended Complaint ("Am. Compl.") at 4;

Dkt. No. 27-1 at ¶ 4). The officer on duty, defendant Correction Officer ("C.O.") Robert Locy, did not personally provide medical aid to plaintiff, but called for "Rovers," who responded to the scene. (Am. Compl. at 4-5; Dkt. No. 27-1 at ¶ 5). Another inmate, Jason Clacks, also observed that plaintiff was choking and performed the Heimlich maneuver. (Am. Compl. at 4; Dkt. No. 27-1 at ¶ 6). Inmate Clack's efforts successfully dislodged the peach pit from plaintiff's throat. (*Id.*).

After the incident, plaintiff was escorted to the health services unit with complaints of a sore throat, sore ribs, and a sore knee. (Am. Compl. at 5; Dkt. No. 27-1 at ¶ 7). Plaintiff received Advil and was returned to his housing unit. (Am. Compl. at 5; Dkt. No. 27-1 at ¶ 8).

### III. **Exhaustion of Administrative Remedies**

    A.    **Legal Standards**

The Prison Litigation Reform Act, ("PLRA"), 42 U.S.C. §1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action. The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim. *See Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004), abrogated on other grounds by *Ross v. Blake,* 380 F. 3d. 670 (2004) (citing *Porter v. Nussle,* 534 U.S. 516, 532 (2002). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675.

The failure to exhaust is an affirmative defense that must be raised by the

3

defendants. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004). As an affirmative defense, it is the defendants' burden to establish that plaintiff failed to meet the exhaustion requirements. *See, e.g., Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *Jones*, 549 U.S. at 218-19 (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. 548 U.S. at 90-103.

At JCCF, the inmate grievance process is initiated by addressing the issue with the Housing Unit Officer. (Dkt. Nos. 24-1 at ¶ 6; 24-2 at 29). If an inmate is unable to resolve the issue with the Housing Unit Officer, the inmate must address the situation with the Shift Supervisor, who will talk with the inmate to see if they can reach an informal resolution. (*Id.*). If the issue cannot be resolved, the inmate "may request and receive a grievance form and must file a formal grievance." (Dkt. No. 24-1 at ¶ 6) . The written grievance is investigated by the Grievance Coordinator, who is required to make a written determination within five business days. (Dkt. Nos. 24-1 at ¶ 8; 24-2 at 30). If the inmate is dissatisfied with the result, he or she must file an appeal of the determination to the Facility Administrator within two business days, who is required to render a determination within five business days of receipt of the appeal. (*Id.*). If

4

dissatisfied, an appeal must be taken with the Citizen's Policy and Complaint Review Council ("CPCRC"). (*Id.*). The inmate grievance process is explained in the rule book distributed to every inmate upon admission to JCCF. (Dkt. No. 24-1 at ¶¶ 4, 6).

Until recently, the Second Circuit utilized a three-part inquiry to determine whether an inmate had properly exhausted his administrative remedies. *See Brownell v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006) (citing *Hemphill v. State of New York*, 380 F.3d 680, 686 (2d Cir. 2004)). The *Hemphill* inquiry asked (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement. *Id.*

The Supreme Court has now made clear that courts may not excuse a prisoner's failure to exhaust because of "special circumstances." *Ross v. Blake*, __ U.S. __, 136 S. Ct. 1850, 1857 (June 6, 2016). "'[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion.'" *Riles v. Buchanan*, 656 F. App'x 577, 580 (2d Cir. 2016) (quoting *Ross*, 136 S. Ct. at 1857). Although *Ross* has eliminated the "special circumstances" exception, the other two factors in *Hemphill* – availability and estoppel – are still valid. The court in *Ross* referred to "availability" as a "textual exception" to mandatory exhaustion, and "estoppel" has become one of the three factors in determining availability. *Ross*, 136 S. Ct. at 1858. Courts evaluating whether an inmate has exhausted his or her administrative remedies must focus on whether those remedies were "available" to the

5

inmate. *Id; see also Riles*, 2016 WL 4572321 at *2.

### B. Application

Defendant argues that he is entitled to summary judgment because plaintiff failed to exhaust his administrative remedies. Plaintiff maintains that because the on-duty correction officer at JCCF refused to accept his grievance for filing, his failure to exhaust should be excused.

"Failure to exhaust administrative remedies is an affirmative defense; accordingly, a defendant bears the burden of persuasion on whether a plaintiff failed to satisfy the exhaustion requirements." *Galberth v. Plumbly*, No. 9:14-CV-115 (BKS/ATB), 2018 WL 11189327, at *2 (N.D.N.Y. Jan. 12, 2018) (citing inter alia *Hubbs v. Suffolk Cty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015)); see also *Nelson v. Plumley*, No. 12-CV-422 (TJM/DEP), 2015 WL 4326762, at *7 (N.D.N.Y. July 14, 2015) ("As an affirmative defense, the party asserting failure to exhaust administrative remedies typically bears the ultimate burden of proving its essential elements by a preponderance of the evidence." (citation omitted)). The defendant discharges its initial burden of production by "demonstrating that a grievance process exists" and that the plaintiff failed to utilize the grievance procedure. *White v. Velie*, 709 F. App'x 35, 38 (2d Cir. 2017); see also *Williams v. Priatno*, 829 F.3d 118, 126 n.6 (2d Cir. 2016) ("[D]efendants bear the initial burden of establishing the affirmative defense of non-exhaustion by pointing to legally sufficient sources such as statutes, regulations, or grievance procedures which demonstrate that a grievance process exists and applies to the underlying dispute.") (internal quotation marks omitted). The burden of production

6

then shifts to the plaintiff, who must show that "other factors rendered a nominally available procedure unavailable as a matter of fact." *Galberth v. Plumbly*, 2018 WL 11189327, at *2 (citing *Hubbs*, 788 F.3d at 59); see also *Ross*, 136 S. Ct. at 1856 ("Under the PLRA, a prisoner need exhaust only 'available' administrative remedies.").

"Under § 1997e(a), the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Ross*, 136 S. Ct. at 1858. The Second Circuit has explained that an administrative remedy may be unavailable when: (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) "an administrative scheme [is] so opaque that it becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Williams*, 829 F.3d at 123–24 (quoting *Ross*, 136 S. Ct. at 1859–60).

Here, it is undisputed that plaintiff did not file a grievance regarding defendant's alleged deliberate indifference. Defendant has therefore satisfied his initial burden of production to show that plaintiff failed to exhaust all administrative remedies before commencing suit. The inquiry therefore turns on whether plaintiff's administrative remedies were unavailable under *Ross*.

According to the plaintiff, four days after the choking incident he asked Sergeant Hyde for a grievance form "to address C.O. Locy's conduct." (Am. Compl. at 4). Sergeant Hyde refused to provide plaintiff with a grievance form, telling plaintiff that he had "only choked for 15 seconds" and the issue was nongrievable. (*Id.* at 5).

7

Plaintiff then asked Sergeant Allen for a grievance form, who "verbally assaulted and abused" plaintiff before "eventually" providing him with one. (*Id.* at 4, 6). Nevertheless, plaintiff contends that the correction officer on shift the next day refused to accept his grievance form for filing. (*Id.*). In his opposition to defendant's motion for summary judgment, plaintiff identifies "C.O. Baker" as the correction officer who refused to file his grievance. (Dkt. No. 31 at 2).

In opposition to plaintiff's argument that his administrative remedies were unavailable, defendant highlights this court's prior dismissal of plaintiff's constitutional claims against Sergeants Hyde and Allen for their alleged interference with the grievance process. (Dkt. Nos. 7, 10). Defendant also contends that plaintiff could have requested a grievance form from the other shift supervisors on duty. These arguments miss the mark, as plaintiff concedes that he eventually received a grievance form from Sergeant Allen. Moreover, this court's decision that no constitutional claim lies in a prison official's failure to provide an inmate with a grievance form does not intimate that such conduct, if proven true, could not render administrative remedies unavailable. *See V.W. by and through Williams v. Conway*, 236 F. Supp. 3d 554, 585 (N.D.N.Y. 2017) (Unchallenged allegations that county justice center staff consistently refused to provide grievance forms, ignored grievances, and in some cases threw grievances in the trash sufficiently established that administrative remedies were unavailable to juvenile inmates).

In any event, the present issue for consideration is whether C.O. Baker's conduct, as alleged, rendered plaintiff's administrative remedies unavailable. Defendant

8

maintains that plaintiff's assertions regarding C.O. Baker's conduct are "self-serving" and "insufficient." In support of his position, defendant cites to various opinions holding that an inmate's general claim his grievance was lost or destroyed does not excuse the exhaustion requirement. *See Rodriguez v. Cross*, No. 15-CV-1079 (GTS/CFH), 2017 WL 2791063 at *7 (N.D.N.Y. May 9, 2017), report-recommendation adopted, 2017 WL 2790530 (N.D.N.Y. June 27, 2017); *Colón v. New York State Dep't of Corr. & Cmty. Supervision*, No. 15 Civ. 7432, 2019 WL 5294935, at *1 (S.D.N.Y. Oct. 17, 2019) . These cases are not directly on point, however, as the instant case does not contemplate a grievance generally alleged to have been "lost" in the filing process; here plaintiff maintains that a prison official affirmatively prevented him from filing his grievance in the first place. Many courts in this circuit have considered a similar fact pattern as a basis for unavailability. *See LionKingzulu v. Jayne,* 714 F. App'x 80, 82 (2d Cir. 2018) ("LionKingzulu's allegation that he filed a timely grievance while at Wende but the grievance was not processed or accepted . . . presents a stronger argument that remedies were unavailable."); *see also Woodward v. Lytle*, No. 9:16-CV-1174 (NAM/DEP), 2018 WL 4643036, at *4-5 (N.D.N.Y. Sept. 27, 2018) (finding an issue of fact as to the availability of the grievance process where plaintiff drafted and submitted a grievance that was never filed or answered) (collecting cases).

This is not to say that every general allegation of a correction officer's refusal to file an inmate grievance will survive dispositive motion practice. When considered on a motion for summary judgment, as availability often is, the courts consider the issue on a case by case basis, after a thorough consideration of the record before them. Often,

the submission of evidence such as party depositions and/or affidavits ultimately assist the court in deciding whether a genuine issue of material fact remains.

In this case, the absence of any such evidence precludes a finding of summary judgment on the issue of exhaustion. Although defendant challenges plaintiff's premise as to the availability of his administrative remedies, he fails to point to any evidence upon which the court could rely in finding an absence of a disputed fact on this issue. To the extent he contends plaintiff never attempted to file a grievance with a "C.O. Baker," defendant has not provided the court with an affidavit from C.O. Baker, or any other prison official, suggesting that plaintiff's allegation could not be true. To the extent defendant argues that C.O. Baker's refusal to file plaintiff's grievance did not render his administrative remedies unavailable (i.e. plaintiff had other reasonably available means to file his grievance), the court has no basis to agree without resorting to speculation. Plaintiff has alleged, and defendant does not dispute, that JCCF does not provide anything akin to a "drop box" through which an inmate may submit a grievance. In fact, the inmate rule book submitted by defendant provides no guidance on *how* an inmate may file a grievance; the rules merely state that a formal grievance form will be provided upon request, and then an inmate grievance "will be investigated." (Dkt. No. 24-2 at 29-30). Nor does the affidavit of Facility Administrator Lieutenant Mark Wilson provide any insight into how an inmate may file a formal grievance at JCCF. (Dkt. No. 24-1 at ¶¶ 6–8). In the absence of such evidence, or any testimony from the plaintiff contradicting his position that C.O. Baker's refusal to accept and file his grievance precluded him from exhausting his

administrative remedies, this court cannot recommend summary judgment. *See Local Unions 20 v. United Bhd. of Carpenters & Joiners of Am.,* 223 F. Supp. 2d 491, 507 (S.D.N.Y. 2002) ("declin[ing], in the absence of any evidence, to speculate on what 'the evidence would show' if offered").

To be clear, this court is not making a finding that C.O. Baker refused plaintiff's grievance, or impeded his ability to file. However, plaintiff's allegations raise an unresolved question of fact regarding the "availability" of plaintiff's administrative remedies. The question of whether plaintiff's ability to file his grievance was obstructed by JCCF prison officials cannot be decided based on the documents submitted alone. Therefore, at this juncture the court cannot recommend granting summary judgment in favor of defendant based upon a failure to exhaust.

## IV. Deliberate Indifference to Medical Needs

### A. Legal Standard

Plaintiff's claims are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eighth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d. Cir. 2017) (citation omitted). The Supreme Court recently distinguished between Eighth and Fourteenth Amendment excessive force claims, holding that a pretrial detainee need not demonstrate that an officer accused of using excessive force was subjectively aware that his use of force was unreasonable. *See Kingsley v. Hendrickson*, ___ U.S. ___, 135 S. Ct. 2466, 2470-71 (2015). In *Darnell*, the Second Circuit extended the *Kingsley* standard to a pretrial detainee's allegations related to unconstitutional conditions of confinement.

11

*See Darnell*, 849 F.3d at 35. District courts in this circuit have since further applied the *Kingsley* standard to claims of deliberate indifference to serious medical needs brought under the Fourteenth Amendment. See *Villafane v. Sposato*, No. 16-CV-3674, 2017 WL 4179855, at *19 (E.D.N.Y. Aug. 22, 2017) ("District Courts in this circuit have applied *Kingsley* to claims for deliberate indifference to medical needs"); *Lloyd v. City of New York*, 246 F. Supp. 3d 704, 718 (S.D.N.Y. March 31, 2017) ("The reasoning of *Darnell* applies equally to claims of deliberate indifference to serious medical needs under the Fourteenth Amendment"); *Torrez v. Semple*, No. 17-CV-1211, 2017 WL 3841686, at *3 (D. Conn. Sept. 1, 2017) ("[F]or a claim of deliberate indifference to mental health needs or unconstitutional conditions of confinement under the Fourteenth Amendment, a pretrial detainee can satisfy the subjective element by showing that the defendants 'knew, or should have known, that the condition posed an excessive risk to health or safety' ").

"[D]eliberate indifference to serious medical needs . . . constitutes the 'unnecessary and wanton infliction of pain,' . . . whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (internal citation omitted). In order to state a claim based on constitutionally inadequate medical treatment, a plaintiff must satisfy a two-prong test. *Darnell,* 849 F.3d at 29. The first element is objective and "considers whether the alleged deprivation of adequate medical care [was] sufficiently serious." *Spavone v. N.Y. State Dep't of Corr.*

*Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006))(quotation marks omitted).[2] The second, 'mental' element[3] ensures that the defendant acted with at least deliberate indifference to the challenged conditions. *See Darnell*, 849 F.3d at 29; see also *Bell v. Carson*, No. 9:18-CV-783 (MAD/ATB), 2018 WL 5993686, at *2 (N.D.N.Y. Nov. 15, 2018).

### 1. Objective Element

In order to meet the objective requirement, the alleged deprivation of adequate medical care must be "sufficiently serious." *Salahuddin*, 467 F.3d at 279 (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Determining whether a deprivation is sufficiently serious also involves two inquiries. *Id.* The first question is whether the plaintiff was actually deprived of adequate medical care. *Id.* Prison officials who act "reasonably" in response to the inmates health risk will not be found liable under the Eighth Amendment because the official's duty is only to provide "reasonable care." *Id.* (citing *Farmer*, 511 U.S. at 844–47).

---

[2]Although the Supreme Court, in *Kingsley*, altered the standard for deliberate indifference claims, the objective prong remains the same whether analyzed under the Eighth or Fourteenth Amendments. *Figueroa v. Cty. of Rockland*, No. 16-CV-6519, 2018 WL 3315735, at *4 (S.D.N.Y. July 5, 2018).

[3]In *Darnell*, the Second Circuit cautioned that this element, commonly referred to as the "subjective prong," was better classified as a "*mens rea* prong" or "mental element prong." The Court reasoned that the term "subjective prong" might be a misleading description because "the Supreme Court has instructed that "deliberate indifference roughly means 'recklessness,' but 'recklessness' can be defined subjectively (what a person actually knew, and disregarded), or objectively (what a reasonable person knew, or should have known)." *Darnell,* 849 F.3d at 29 (citing *Farmer v. Brennan,* 511 U.S. 825, 836-37 (1994). After the Second Circuit concluded that deliberate indifference should be defined objectively for a claim of a due process violation, other courts in this circuit have adopted the phrase "mental element prong" to more appropriately describe the relevant standard. *See Durham,* 2019 WL 1103284, at *4; *Richardson v. Corr. Medical Care, Inc.,* No. 9:17-CV-0420 (MAD/TWD), 2018 WL 1580316, at *5-6 (N.D.N.Y. Mar. 28, 2018).

The second part of the objective test asks whether the purported inadequacy in the medical care is "sufficiently serious." *Id.* at 280. The court must examine how the care was inadequate and what harm the inadequacy caused or will likely cause the plaintiff. *Id.* (citing *Helling v. McKinney*, 509 U.S. 25, 32–33 (1993)). If the "unreasonable care" consists of a failure to provide *any* treatment, then the court examines whether the inmate's condition itself is "sufficiently serious." *Id.* (citing *Smith v. Carpenter*, 316 F.3d 178, 185–86 (2d Cir. 2003)). However, in cases where the inadequacy is in the medical treatment that was actually afforded to the inmate, the inquiry is narrower. *Id.* If the issue is an unreasonable delay or interruption of ongoing treatment, then the "seriousness" inquiry focuses on the challenged delay itself, rather than on the underlying condition alone. *Id.* (citing *Smith*, 316 F.3d at 185). The court in *Salahuddin* made clear that although courts speak of a "serious medical condition" as the basis for a constitutional claim, the seriousness of the condition is only one factor in determining whether the deprivation of adequate medical care is sufficiently serious to establish constitutional liability. *Id.* at 280.

### 2. Mental Element

Under the second prong of the deliberate indifference analysis, the court must consider whether defendants "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the [plaintiff] even though [they] knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35. "As a consequence, the relevant *mens rea* is recklessness, which, for present purposes, 'more

closely resembles recklessness as the term is used in the civil context' and 'does not require a defendant to be subjectively aware of the harm resulting from his acts or omissions.'" *Singletary v. Russo,* No. 13-CV-04727, 2019 WL 1929819, at *10 (E.D.N.Y. Feb. 22, 2019) (citing *Feliciano v. Anderson*, No. 15-CV-4106, 2017 WL 1189747, at *13 (S.D.N.Y. Mar. 30, 2017)) (citations omitted). Under this standard, "a defendant possesses the requisite *mens rea* when he acts or fails to act under circumstances in which he knew, or should have known, that a substantial risk of serious harm to the [plaintiff] would occur." *Feliciano*, 2017 WL 1189747, at *13 (citing *Darnell*, 849 F.3d at 35).

### B.  Application

Defendant argues that plaintiff's deliberate indifference claim fails because plaintiff was not deprived of adequate medical care.  Defendant further contends that any purported inadequacy in medical care was not "sufficiently serious."  Last, defendant contends that plaintiff cannot satisfy the mental element of his deliberate indifference claim.  Plaintiff maintains that defendant was deliberately indifferent to his serious medical need when he neglected to administer or summon medical aid in response to plaintiff choking.

Upon review of the party submissions, I decline to recommend awarding summary judgment to the defendant as to the claim of his deliberate indifference to plaintiff's serious medical need.  With respect to the objective prong, defendant has not overcome the question of fact as to whether defendant acted "reasonably" in response to plaintiff's health risk.  It is undisputed that defendant did not personally render or

summon medical aid in response to plaintiff choking, which clearly posed an imminent and serious threat to plaintiff's health, if not his survival. Instead, the evidence shows that defendant called for "Rovers." Plaintiff alleges that four other officers subsequently arrived and directed the inmates in the vicinity to "lock in." (Dkt. No. 31 at 1). Plaintiff asserts that the additional officers called by the defendant did not provide medical aid, nor were they intended to provide any. According to both parties, the peach pit only became dislodged when another inmate, Jason Clacks, performed the Heimlich maneuver on plaintiff.

In support of his motion, defendant has submitted portions of plaintiff's discovery disclosures, including a May 6, 2019 memorandum from Sergeant Allen regarding subsequent complaints by inmate Clacks about the underlying incident. (Dkt. No. 34-1 at 5). The memorandum indicates that per JCCF protocol, it was not an inmate's duty to provide "any sort of aide to another inmate," and that the provision of the Heimlich maneuver by inmate Clacks was "not appropriate." (*Id.*). It further implies that inmate Clacks's conduct was subject to reprimand and a misbehavior report. (*Id.*). Thus, the evidence suggests that it would have been unreasonable for a correction officer to rely on an inmate to provide emergency medical aid to another inmate.

Otherwise, defendant's submission does not overcome the allegation that his response to plaintiff's serious medical need was inadequate. Defense counsel maintains that defendant did nothing "other than what he was trained and supposed to do, which was to maintain order within the unit and ensure that inmates are secured in their cells

during emergency situations, not render aid." (Dkt. No. 34-4 at 12-13). This proposition may be true, and the defendant's failure to personally administer aid does not necessarily render him liable. However, defendant has not presented any evidence compelling this court to conclude, as a matter of law, that summoning Rovers, i.e. other correction officers, instead of medical personnel, was a reasonable response to plaintiff choking. *See Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) ("[F]ailing to take reasonable measures in response to a medical condition can lead to liability[.]").

Defendant has submitted JCCF policies and procedures relevant to the duties of Rovers in support of his motion (Dkt. No. 34-3). Although the policies and procedures identify one of a Rover's many duties to include "act as a response team for emergencies," there is no evidence that summoning Rovers was an adequate response to an inmate's serious medical need. *Cf. Esmont v. City of New York*, 371 F. Supp. 2d 202, 218 (E.D.N.Y. 2005) (evidence did not support a finding of deliberate medical indifference where defendants called emergency medical services when informed that detainee was suffering from an asthma attack). There is otherwise no evidence in the record of how defendant's conduct would have led to the provision of reasonable medical care to the plaintiff under the circumstances alleged.

The court also finds a question of fact with respect to the second part of the objective inquiry, to the extent that choking can constitute a serious medical need. *See Charles v. Orange Cnty.*, 925 F.3d 73, 86 (2d Cir. 2019) (citing *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)) ("The serious medical needs standard contemplates a condition of urgency such as one that may produce death, degeneration, or extreme

17

pain."); *see also Cooper v. C.O. Allison McGowan, et. al.*, No. 17-CV-383, 2017 WL 6626549, at *3 (W.D. Wis. Aug. 18, 2017) ("A risk of choking is a serious medical need[.]"); *Loosier v. Unknown Med. Doctor*, 435 F. App'x 302, 306-07 (5th Cir. 2010).[4] Plaintiff has presented evidence that he was choking and unable to breathe until inmate Clacks intervened. As a result of choking, as well as the Heimlich maneuver eventually performed by inmate Clacks, plaintiff alleges that he suffered from sore ribs, sore knees and a sore throat. Plaintiff denies defendant's assertion that he was examined for injuries after the fact. (Dkt. No. 33 at 2). In the face of these allegations, defendant fails to present any evidence compelling this court to conclude, as a matter of law, that plaintiff did not experience a condition of urgency constituting a serious medical need.

Moreover, the evidence presented to this court, taken in the light most favorable to the plaintiff, is also sufficient to create a genuine issue of fact as to the mental prong of deliberate indifference – namely, whether defendant "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though [they] knew, or should have known, that the condition posed an excessive risk to health or safety." *Singletary v. Russo*, 377 F. Supp. 3d 175, 192 (E.D.N.Y. 2019) (quoting *Darnell,* 849 F.3d at 35). Defendant does not dispute that he knew plaintiff was choking. Thus, the factual dispute precluding summary judgment lies in the culpability of defendant's response to plaintiff choking. Plaintiff maintains that the defendant did not summon Rovers to

---

[4]*Cf. Yancey v. Robertson*, ___ Fed. App'x ___, 2020 WL 5948898 (2d. Cir. 2020) (affirming district court's finding that plaintiff's allegation of "*some* respiratory distress" brought on by an allergic reaction was not serious enough to satisfy the Fourteenth Amendment standard.)

provide necessary medical assistance, but only called the additional officers to assist with crowd control.  (Am. Compl. at 4-5). If accepted as true, a jury could determine that defendant failed to act under circumstances in which he knew, or should have known, that a substantial risk of serious harm to the plaintiff would occur.  Defendant maintains that his response to plaintiff's choking episode was adequate and per facility protocol, however there is no admissible evidence from the defendant suggesting that his actions in connection with plaintiff's choking episode lacked a culpable *mens rea*.

Based on the record before this court, and the aforementioned analysis, defendant has failed to establish his entitlement to judgment as a matter of law on plaintiff's deliberate indifference claim.  *See Reynolds v. O'Gorman,* No. 9:20-CV-686 (TJM/ML), 2020 WL 54943996, at *4 (N.D.N.Y. Sept. 11, 2020) (quoting *Davidson v. Scully*, No. 83-CV-2025, 1994 WL 669549, at *12 (S.D.N.Y. Nov. 30, 1994) ("Evidence of deliberate indifference may be found in . . . a serious failure to provide needed medical attention when prison officials are fully aware of that need. . . .") (internal quotation marks and citations omitted).

**WHEREFORE**, based on the findings above, it is

**ORDERED,** that the Clerk of the Court shall amend the caption to correctly identify Correction Officer Locy as the only remaining defendant in this action; and it is further

**RECOMMENDED**, that defendant's motion for summary judgment (Dkt. No. 24) be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have

fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: October 21, 2020

*[signature: Andrew T. Baxter]*
Andrew T. Baxter
U.S. Magistrate Judge