**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**ROBERT SAWYER,**

                              **Plaintiff,**

          **vs.**                                    **9:19-cv-879**
                                                     **(MAD/ATB)**

**CORRECTIONAL OFFICER**
**LOCY,**

                              **Defendant.**

_____

**APPEARANCES:**                          **OF COUNSEL:**

**GOLDBERG SEGALLA, LLP**            **THOMAS PAUL ARMSTRONG, ESQ.**
8 Southwoods Blvd., Suite 300
Albany, New York 12205
Attorneys for Plaintiff

**BARCLAY DAMON LLP**                **TERESA M. BENNETT, ESQ.**
Barclay Damon Tower
125 East Jefferson Street
Syracuse, New York 13202
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

**ORDER**

    Plaintiff Robert Sawyer commenced this action _pro se_ on July 22, 2019, against the

County of Jefferson, Sheriff Colleen O'Neill, Correctional Officer Hyde, Correctional Officer

Allen, and Correctional Officer Locy.  _See_ Dkt. No. 1.  On September 12, 2019, Plaintiff filed a

motion to amend his complaint.  _See_ Dkt. No. 9.  On October 2, 2019, the Court reviewed

Plaintiff's amended complaint, dismissed Plaintiff's claims against all defendants except

Defendant Locy, and accepted the amended complaint as the operative pleading.  Dkt. No. 10.

On October 21, 2020, Magistrate Judge Andrew T. Baxter issued an Order and Report-Recommendation recommending that the Court deny Defendant's motion for summary judgment.  Dkt. No. 38.  On December 16, 2020, the Court adopted the report-recommendation in its entirety.  Dkt. No. 45.  Counsel was appointed for Plaintiff on April 15, 2021, and a bench trial is scheduled to commence on October 4, 2021.  Dkt. No. 70.

Plaintiff's remaining claim alleges that Defendant Locy exhibited deliberate indifference to a medical need in violation of the Fourteenth Amendment.  *See* Dkt. No. 83 at 4.  On April 26, 2019, Plaintiff, an inmate at the Jefferson County Correctional Facility, choked on a peach pit.  *Id.* at 2.  The parties agree that Defendant Locy did not provide medical aid to Plaintiff, and instead called for "Rovers" to respond to the scene.  *Id.*  The peach pit was dislodged by a fellow inmate, Jason Clacks.  Plaintiff complained of sore ribs, left knee, and throat.  *Id.*  He was escorted to the medical services unit and given Advil.  *Id.*

In anticipation of trial, Plaintiff has filed a motion *in limine* requesting spoilation sanctions pursuant to Federal Rule of Civil Procedure 37(e) for the failure to preserve electronically stored information.  *See* Dkt. No. 75.  Specifically, Plaintiff seeks spoilation sanctions due to the destruction of video surveillance footage of Plaintiff's choking incident.

"Spoilation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999).  The district court is vested with wide discretion in determining the appropriate sanction.  *See Reilly v. Nat-West Markets Group, Inc.*, 181 F.3d 253, 267 (2d Cir. 1999).  "The right to impose sanctions for spoilation arises from a court's inherent power to control the judicial process and litigation, but the power is limited to that necessary to redress conduct which abuses the judicial process."

*Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2000) (citation omitted) *superseded by statute on other grounds*.

To secure spoliation sanctions based on the destruction or delayed production of evidence, a moving party must prove that: (1) the party having control over the evidence had an obligation to preserve or timely produce it; (2) the party that destroyed or failed to produce the evidence in a timely manner had a "culpable state of mind"; and (3) the missing evidence is "relevant" to the moving party's claim or defense "such that a reasonable trier of fact could find that it would support that claim or defense." *Id.* (citation omitted).

If a party has an obligation to preserve evidence, the degree of the party's culpability and the amount of prejudice caused by its actions will determine the severity of the sanctions to be imposed. *See Henkel Corp. v. Polyglass USA, Inc.*, 194 F.R.D. 454, 456 (E.D.N.Y. 2000) (citations omitted). "Nonetheless, a court should never impose spoliation sanctions of any sort unless there has been a showing – inferential or otherwise – that the movant has suffered prejudice." *GenOn Mid-Atlantic, LLC v. Stone & Webster, Inc.*, 282 F.R.D. 346, 353 (S.D.N.Y. 2012) (citing *Orbit One Commc'ns, Inc. v. Numerex Corp.*, 271 F.R.D. 429, 431 (S.D.N.Y. 2010)).

Jefferson County Correctional Facility keeps all video footage for up to 30 days before "the system rewrites itself" to preserve space on the server. Dkt. No. 84-2 at ¶¶ 4-5. When an inmate files a grievance, the footage is reviewed. *Id*. at ¶ 6. If the grievance is "determined to not have any merit," however, then the video footage is not preserved. *Id*. at ¶ 7. Here, it is undisputed that video footage of Plaintiff choking was not preserved.

Plaintiff argues that an April 29, 2019 grievance filed by Jason Clacks provided notice of "reasonably foreseeable litigation." Dkt. No. 75-1 at 115; *West*, 167 F.3d at 779. Mr. Clacks'

grievance details Plaintiff choking, the correctional officer requesting "Rovers" rather than providing aid, and his own admirable performance of the Heimlich maneuver.  Dkt. No. 75-1 at 115-16.  The grievance requests that the officer "be placed on administrative leave until he is properly trained." *Id*. at 116.  The grievance was denied on May 6, 2019.  *Id*. at 117.  Mr. Clacks did not appeal the denial of his grievance.  Plaintiff never filed his own grievance.

"Where one seeks an adverse inference regarding the content of destroyed evidence, one must first show that 'the party having control over the evidence … had an obligation to preserve it at the time it was destroyed.'" *Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 107 (2d Cir. 2001) (quoting *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998)).  Defendant argues that he did not have notice of potential litigation, and therefore no obligation to preserve the video footage, until he was served with this lawsuit, on October 4, 2019.  *See* Dkt. No. 15.  Additionally, Defendant argues that he did not have control over the video footage, and therefore did not have a duty to maintain it and did not fail to preserve it.  *See* Dkt. No. 84 at 14.

The Court agrees.  Defendant had no reason to anticipate litigation, in this instance, until the Amended Complaint was served on him.  Plaintiff did not file a grievance, declining "to take that 'first step' … down the road to litigation." *McIntosh v. United States*, No. 14-CV-7889, 2016 WL 1274585, at *33 (S.D.N.Y. Mar. 31, 2016).  A grievance filed by another inmate requesting an officer be placed on administrative leave is not sufficient – particularly where its denial was not appealed.  There was no indication that the video footage was relevant to future litigation where an inmate who could not bring a lawsuit, filed a grievance requesting a remedy a court could not grant.  Here, there are no facts to support a finding that Defendant should have anticipated litigation until he was served with the Amended Complaint.  *See, e.g.*, *Williams v. Geraci*, No. 14-CV-5742, 2020 WL 5848738, *13 (E.D.N.Y. Sept. 30, 2020) (holding that the

correctional officer did not have notice of likely litigation until the service of complaint);
*McIntosh*, 2016 WL 1274585, at *33.

Additionally, Plaintiff has not shown that Defendant had any control over the video footage, "any duty to maintain it, or were in any way involved in the failure to preserve it." *Thousand v. Corrigan*, No. 9:15-cv-1025, 2017 WL 4480185, *2 (N.D.N.Y. Oct. 6, 2017) (citing *Grant v. Salius*, No. 3:09-cv-21, 2011 WL 5826041, *2 (D. Conn. Nov. 18, 2011)). Although the Second Circuit has not addressed this specific situation, where the parties against whom the adverse inference is sought had no duty or role with respect to the maintenance or destruction of the evidence at issue, several district courts have addressed similar scenarios and reached common conclusions.

In *Grant*, the plaintiff sought a spoliation instruction against the defendant correctional officers when the defendants were unable to produce video and audio recordings of an alleged attack. *See Grant*, 2011 WL 5826041, at *1-*2. Similar to this case, the evidence at issue was recorded by the prison's surveillance system and unless it is copied or marked for storage within thirty days, the tapes are recorded over and cannot be retrieved. *See id*. The district court denied the request for sanctions because the defendant correctional officers were not responsible or culpable for their destruction. *See id.* at *2-*3; *see also Field Day, LLC v. County of Suffolk*, No. 04-cv-2202, 2010 WL 1286622, *2-*4 (E.D.N.Y. Mar. 25, 2010) (holding that spoliation sanctions were unwarranted against the individual defendants because "[a]ny spoliation" was "attributable solely to the County" and the plaintiffs did not show that the individual defendants actually spoliated any evidence); *Barnes v. Harling*, 368 F. Supp. 3d 573, 609 (W.D.N.Y. 2019) (same); *Braham v. Lantz*, No. 3:08-cv-1564, 2014 WL 1270096, *5-*7 (D. Conn. Mar. 27, 2014) (same).

Plaintiff also argues that the video footage existed on December 3, 2019, after this litigation commenced, because a Freedom of Information Law request for the video was denied due to security issues with turning over the footage. *See* Dkt. No. 75-2 at 7-8. The Records Access Officer who issued the denial letter, Robert F. Hagemann, III, submitted an affidavit explaining the denial. Mr. Hagemann states that he issues such a denial prior to investigating whether the video exists because it is not discoverable. *See* Dkt. No. 84-3 at ¶¶ 4, 6. The denial is given to all requests for prison footage as a security measure and does not imply the footage's existence. Indeed, the denial letter states, "disclosure of any video inside the Jail would compromise the security of the facility." Dkt. No. 22-1 at 6. The Court agrees that a rote denial of a FOIL request for security reasons does not imply the video footage's existence at the time the denial is made.

After carefully reviewing the record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion *in limine* (Dkt. No. 75) is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: September 29, 2021
       Albany, New York

Mae A. D'Agostino
U.S. District Judge